**UNITED STATED DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **LARRY WAYNE BARNES, SR.** and | ) |
| **LINDA SUE BARNES,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) **CASE NO. 11-CV-582-HE-PJC** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| **CITY OF TULSA, RONALD PALMER,** | ) |
| **BRANDON MCFADDEN,** | ) |
| **BUREAU OF ALCOHOL TOBACCO** | ) |
| **FIREARMS AND EXPLOSIVES, AND** | ) |
| **JOHN DOES 1-30,** | ) |
| | ) **ATTORNEY LIEN CLAIMED** |
| **Defendants.** | ) **JURY TRIAL DEMANDED** |

**SECOND AMENDED COMPLAINT**

**COME NOW** the Plaintiffs, Larry Wayne Barnes, Sr. ("Plaintiff") and his spouse, Linda Sue Barnes ("Ms. Barnes"), and submits their Second Amended Complaint asserting their causes of action against the Defendants.

**PARTIES, JURISDICTION & VENUE**

1.      The Plaintiff and Ms. Barnes, the Plaintiff's spouse, are residents of Tulsa County, State of Oklahoma, which is located in the Northern District of Oklahoma.

2.      Upon information and belief, Ronald Palmer ("Chief Palmer") is a resident of Tulsa County, was the Chief of the City of Tulsa's Police Department ("TPD"), and his actions at all times relevant were in both his official and individual capacity.

3.      Jeff Henderson ("Henderson") is a resident of Tulsa County and at all times Henderson relevant was a TPD officer working in Tulsa Police Department's Special Investigations Division and assigned to the Tulsa County Drug Task Force. Henderson's father,

1

Jim "Bung" Henderson, was a mainstay at TPD, and close friends with Chief Palmer.  After Bung Henderson's death, Palmer helped organize a memorial fishing tournament named in honor of Bung Henderson.

4.       Upon information and belief, Brandon McFadden ("McFadden") is a resident of Lubbock, State of Texas; however he was recently a pretrial detainee housed in a detention facility in either Creek or Tulsa County, State of Oklahoma. At all times relevant McFadden was an agent employed by the United States Department of Alcohol, Tobacco, Firearms and Explosives ("BATF") and assigned to the Tulsa County Drug Task Force.

5.       The United States of America, by and through the BATF, a division of the U.S. Department of Justice, employed McFadden at all times relevant to this cause of action. The Plaintiff has complied with the notice and presentment of federal tort claim act claim to the BATF pursuant to 28 U.S.C. § 2675 and such was left without action by the BATF for six months.

6.       Upon information and belief, at all times relevant the Defendant John Does 1-30, employees of either TPD or BATF ("John Does 1-30") were officers, agents, and representatives of their respective governmental entities.

7.       Upon information and belief, at all times relevant Defendant John Does 31-40 ("John Does 31-40" or "31-40") were supervisors and/or policy makers for the City of Tulsa.

8.       At all times relevant, the Defendant City of Tulsa ("City of Tulsa") is a political subdivision of the state of Oklahoma responsible for staffing, maintaining, and otherwise operating the TPD. The Plaintiffs represent to this Court that they complied with the Notice provisions in Oklahoma's Governmental Tort Claims Act, 51 O.S. § 151, *et. seq.* ("GTCA"), in that they provided COT timely notice of two claims for malicious prosecution and retaliation,

and such was denied by operation of law. It is specifically noted that COT counsel specifically advised the Plaintiffs of their need to file a separate GTCA notice for their retaliation claim.

9.      The jurisdictional basis for this Court to determine this cause of action is pursuant to U.S.C. § 1331 as this cause of action arises under federal law: 42 U.S.C. § 1983, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and the Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq*. The Court likewise has supplemental jurisdiction over Plaintiffs' tort claims pursuant to 28 U.S.C. § 1367.

10.     Venue is properly laid in the Northern District of Oklahoma pursuant to 28 U.S.C. § 1391(b) as the incidents giving rise to this action occurred in Tulsa County, State of Oklahoma.

## STATEMENT OF FACTS

11.     Ryan Logsdon ("Logsdon") was a confidential informant working with officers of the Tulsa County Drug Task Force, specifically Henderson and McFadden. Logsdon had a felony conviction for possession of drugs and intent to distribute drugs in 1988. He served eighteen months of a four year sentence for this offense. Later, Henderson and McFaddon found Logsdon in possession of three pounds of uncut methamphetamine and $10,000.00 in cash at his home for which Logsdon was neither arrested nor charged.

12.     In the spring of 2007, Henderson and McFadden allegedly gave methamphetamine to a confidential informant, Ryan Logsdon ("Logsdon") to facilitate what would become a fabricated drug transaction with the Plaintiff and daughter Lariat Barnes ("Larita"), who was living at the Plaintiff's residence (the "drug transaction"). McFaddon allegedly gave Logsdon $3,000.00 for the drug transaction.

13.     McFadden and Henderson instructed Logsdon to falsely claim that he purchased the drugs from the Plaintiff and Larita.

3

14.     McFadden and Henderson refused to have Logsdon wear an electronic or digital wire which would have recorded such events.

15.     The alleged $3,000.00 drug buy money was never recovered subsequent to the drug transaction.

16.     At no time before Logsdon allegedly attempted to buy illicit drugs at Plaintiff's home was the Plaintiff ever the target of this criminal investigation. Indeed, at no time prior to the drug transaction was the Plaintiff's name mentioned.

17.     Neither Henderson nor McFadden personally witnessed any of the events in the Plaintiff's home where the alleged drug transaction took place.

18.     The drug transaction resulted in the Plaintiff being charged and ultimately prosecuted for Possession of Methamphetamine with Intent to Distribute and Distribution and 18:2: Aiding and Abetting, and Maintaining a Location to Distribute Controlled Substances; 18:2: Aiding and Abetting.

19.     The Plaintiff's trial on the criminal complaint based upon the drug transaction began on April 22, 2008 through April 23, 2008. Henderson and McFadden both testified as prosecution witnesses. During the course of their testimony, both Henderson and McFadden testified to completely false and/or inconsistent facts pertaining to the drug transaction.

20.     Logsdon testified as a prosecution witness during the Plaintiff's criminal trial. Logsdon testified that the Plaintiff's daughter, Kelie Barnes ("Kelie"), was present at the Plaintiff's home at the time he allegedly purchased illicit drugs from Plaintiff's daughter Larita. Kelie was clocked in on her shift at a Tulsa restaurant (Charlie's Chicken) and time records and trial testimony of her co-workers established that she was at work at the time of the alleged drug purchase at the Plaintiff's home.

4

21.     Logsdon's trial testimony relating to the events in the Plaintiff's home was not corroborated by a single document or witness.

22.     After a two day trial, the Plaintiff was convicted on both criminal counts and ultimately sentenced to sixty six months on both counts which were to run concurrently. He was immediately taken into custody.

23.     Subsequent to the trial wherein the Plaintiff was convicted Logsdon recanted his testimony against the Plaintiff and under oath has stated that he was "coached" into lying against the Plaintiff.

24.     After the Plaintiff's incarceration commenced, it became known that Henderson, McFadden, and Logsdon committed perjury during the trial. This information was made known to the Court and ultimately the Plaintiff and Larita's convictions were dismissed and they were both released.

25.     McFadden was indicted by a Northern District of Oklahoma federal district court for *Conspiracy to Distribute Schedule I and Schedule II Controlled Substances*. He has plead guilty to the charges set forth in said indictment and has specifically named Henderson as both a co-conspirator and for staging the bogus and sham charges against the Plaintiff.

26.     Henderson was indicted by a federal grand jury for a variety of police corruption charges. As such pertains to the Plaintiff, the indictment alleges the following in Count 19:

C.     *Objects of the Conspiracy*
    1.     The object of the conspiracy [between Henderson and others indicted] was to obtain the unlawful arrest, conviction, and imprisonment of Larry Barnes, Sr. and Larita Barnes.

D.     *Manner and means of the Conspiracy*
    1.     **JEFF M. HENDERSON** utilized his position as a law enforcement officer with TPD to obstruct justice through providing false information in TPD reports submitted in support of the prosecution of Larry Barnes, Sr. and Larita Barnes.

5

     2.      **JEFF M. HENDERSON** and Brandon Jay McFadden utilized their positions as law enforcement officers to obstruct justice through providing false testimony under oath and persuading another individual known to the Grand Jury to provide false testimony under oath.

     3.      **JEFF M. HENDERSON**, Brandon Jay McFadden and another individual known to the Grand Jury intentionally deprived Larry Barnes, Sr. and Larita Barnes of rights and privileges secured by the Constitution and laws of the United States.

E.    *Overt Acts in Furtherance of the Conspiracy*

     In furtherance of the conspiracy and to effectuate the objects thereof, **JEFF M. HENDERSON**, Brandon Jay McFadden, and another individual known to the Grand Jury performed one or more of the following overt acts in the Northern District of Oklahoma:

1.    In or about Spring 2007, **JEFF M. HENDERSON** and another individual known to the Grand Jury agreed that the individual would falsely represent that he purchased illegal drugs from Larry Barnes, Sr. and Larita Barnes during a controlled buy on May 8, 2007, during which the individual allegedly acted as a confidential informant.

2.    In or about May 2007, **JEFF M. HENDERSON**, prepared official TPD reports falsely documenting that a controlled drug buy of three ounces of methamphetamine from Larry Barnes, Sr. and Larita Barnes was made by the individual referred to in Overt Act 1 of this Count. These TPD reports further falsely documented that the drug buy occurred on May 8, 2007, and that the individual paid Larry Barnes, Sr. and Larita Barnes $3,000.00 in exchange for the methamphetamine.

…

4.    In or about April 2008, **JEFF M. HENDERSON** and Brandon Jay McFadden coached the individual described in Overt Act 1 of this Count to testify falsely in an upcoming trial at that he/she had made the purported controlled buy from Larry Barnes, Sr. and Larita Barnes on May 8, 2007.

5.    On April 21 and 22, 2008, **JEFF M. HENDERSON** testified falsely that the controlled drug purchase of methamphetamine was made from Larry Barnes, Sr. and Larita Barnes on May 8, 2007, and that he conducted surveillance during the purported controlled drug purchase.

…

8.    On or about June 29, 2009, **JEFF M. HENDERSON** engaged in a telephone conversation with the individual described in Overt Act 1 of this Count during which **JEFF M. HENDERSON** instructed the individual to "stick to the truth and stick to the reports" in asked about the legitimacy of the Barnes' case by any investigators.

27.     Henderson was tried and convicted on eight felony counts which included perjury and violation of civil rights.

28     During Henderson's trial, evidence was presented that the BATF knew that McFadden and John Does 1-30 were engaging in criminal conduct and did nothing to intervene or otherwise stop the same.

29.     The City of Tulsa, Palmer, and John Does 31-40 knew that Henderson and other TPD officers were committing perjury, suborning perjury, fabricating evidence, and initiating what would become malicious prosecution of the Plaintiff and numerous other persons. These governmental entities knew that Henderson had a significant history of rogue activities including randomly committing acts of violence against Tulsa citizens, being untruthful during an internal investigation, and improper use of force. At one point in his career Henderson had the third highest number of citizen complaints or internal affairs investigations in all of the TPD.

30.     In a *Tulsa World* article dated August 8, 2010, the following appeared:

Palmer says he accepts some of the criticism for a police culture that allowed certain officers to commit illegal acts. "I don't feel responsible for the actions of the officers who have admittedly broken the law, but I do feel responsible, in part, for the culture that developed and allowed this to occur," he said…

and

The police department is revising its policies and guidelines as part of the issues raised by the federal grand jury investigation into police corruption in Tulsa. Additionally, on July 23 Jordan announced a no-tolerance policy on lying in response to an internal investigation by the department and grand jury actions…

and

For example, in a policy change May 18, 2006, the police department added prosecutorial consideration to the definition of confidential informant while also clarifying the difference between a confidential informant and a reliable confidential informant, records show. …

Most changes in policies and procedures are made to comply with CALEA standards so that the department can remain CALEA-accredited," Willingham said. "Other reasons that changes are made involve apparent holes in the policy which come to light through questions. Occasional misbehavior can be the cause for a revision as well."

7

Penalties for violating the policies can include a letter of reprimand, suspension, demotion or termination, Willingham said.

In a recent change to recovered-evidence guidelines, the policy makes it clear that on-duty police officers cannot claim found property. The revision was approved May 1, 2009, and states: "On-duty officers who locate found property are prohibited from claiming the found property. The property will be turned in according to the procedures established herein." "From what we can determine, this change was made to make this more clear, but I cannot recall an officer ever claiming found property," Willingham said. Willingham said the department has two full-time officers who oversee CALEA and policy compliance. The officers also remain diligent on the recommended improvements for the guidelines. "For those who have admitted stealing money and other actions, this is an anomaly and it is not part of the department culture," Willingham said. "We may have some gaps in policy, but we are reviewing them so that this does not happen again."

[Emphasis added].

31.     The following is the oath a Tulsa police officer takes:

Having been duly appointed a police officer of the City Of Tulsa and peace officer of the State Of Oklahoma, I do solemnly swear that I will defend, enforce, and obey the Constitution and laws of the United States, the State Of Oklahoma, and the Charter and Ordinances of the City of Tulsa. That I will obey the lawful orders of my superior officers and the regulations of the Tulsa Police Department. That I will protect the rights, lives, and property of all citizens and uphold the   honor of the police profession with my life if need be. This I solemnly swear.

And the following is the Value Oath:

The Tulsa Police Department will apply all knowledge, skills, and available resources by working in partnership with our Community to provide quality service, protect life and property, prevent crime, and resolve problems, so people can live without fear in a safe environment. I accept the responsibilities of being recognized as a leader of the Tulsa Police Department. As a leader, I pledge to honorably perform my assigned duties while displaying the integrity and the courage:

    To stand up for what I know is right,
    To stand up against wrongs in any form,
    To respect the dignity and rights of every individual,
    To exercise wisdom and fairness in dealing with all citizens, and
    To ultimately bring honor and pride upon the Tulsa Police Department and myself.

32.     Subsequent to his release from prison in 2010, the Plaintiffs were retaliated against by TPD and its officers. TPD officers such as Bill Yelton and others attempted "controlled" drug buys at the Plaintiffs' residence.

33.     The aforementioned retaliation and harassment occurred on several occasions, to the extent that Henderson boasted about attempts made by TPD officers to lure the Plaintiff into a drug buy.

34.     On or near September 15, 2011, TPD executed an arrest warrant on Kelie for outstanding <u>traffic violations such as driving without a license, no seat belt, and no proof of insurance</u>, who was at the Plaintiffs' residence. Preceding the warrant execution, City of Tulsa was served a copy of the petition and summons in this action.  Kelie testified against Henderson in his recent federal criminal trial where he was eventually convicted of numerous felony crimes. These included convictions for the crime of perjury which is an issue in this action.

35.     Rather than peaceably knocking on the Plaintiffs' door and requesting Kelie to surrender, TPD busted down their front door and aimed their drawn service weapons at Kelie and the Plaintiff. There was also a small child in the Plaintiffs' home at this time.

36.     One TPD's officer's service weapon was discharged in the Plaintiffs' home. No inhabitant in the Plaintiffs' home was hit by the bullet.

37.     None of the inhabitants of the Plaintiffs' home resisted arrest, attempted to flee, or committed any other act that would not lead a police officer to believe they were in any danger or that Ms. K. Barnes was a flight risk.

### FIRST CAUSE OF ACTION
### FEDERAL TORT CLAIM
### PLAINTIFF vs. THE UNITED STATES OF AMERICA

For his First Cause of Action against the United States of America, the Plaintiff adopts and re-alleges all of his allegations above as if fully set forth herein and further alleges and states as follows:

38.     The United States of America owed common law and statutory duties to protect persons such as the Plaintiffs from misconduct by its special agents and employees, including without limitation the unlawful and unconstitutional investigations by BATF agents, BATF agents giving false testimony, and BATF agents by encouraging others to testify falsely. These duties include without limitation BATF's failure to properly train, monitor, supervise, and its agents such McFadden and John Does 1-30, including termination, once it became known of the obvious signs of McFadden's misconduct.

39.     The United States of America breached the aforementioned duties they owed to persons such as the Plaintiffs, and other common law and statutory duties owed to the Plaintiffs that will be revealed during discovery, and as a direct and proximate result of said breaches caused injury to the Plaintiffs.

40.     The Plaintiff has suffered damages as a result of the duties breached by the United States of America, and other common law and statutory duties owed to the Plaintiffs that will be revealed during discovery. The United States of America is also responsible for the tortious acts of McFadden against these Plaintiffs as well as their own tortious acts against these Plaintiffs. The damages include extreme emotional distress, humiliation, loss of income, physical pain and suffering, mental pain and suffering, impairment of earning capacity, and loss of consortium.

**WHEREFORE**, premises considered, the Plaintiff Larry Wayne Barnes, Sr. prays the Court for Judgment against the Defendant United States of America, and award him compensatory damages in excess of five million dollars ($5,000,000.00), award post judgment interest, attorneys' fees incurred, and any other relief deemed just and equitable.

**SECOND CAUSE OF ACTION**
***BIVENS* ACTION**
**PLAINTIFF vs. MCFADDEN**

For his Second Cause of Action against McFadden, the Plaintiff adopts and re-alleges all of his allegations above as if fully set forth herein and further alleges and states as follows:

41.     McFadden, as a federal official employed by the BATF, acting under color of statute, regulation, custom or law, by fabricating the drug transaction, falsely arresting the Plaintiff, maliciously prosecuting the Plaintiff subsequent to the drug transaction, committing perjury during the Plaintiff's criminal trial, and suborning Logsdon's testimony at the Plaintiff's criminal trial, caused the Plaintiff to be subjected to the deprivation of his rights, privileges, and immunities secured by the Fourteenth Amendment of the Constitution of the United States and its laws.

42.     McFadden personally participated in the alleged drug transaction and in the violations of the Plaintiff's constitutional rights.

43.     McFadden's actions were reckless, knowing, intentional, malicious and/or wanton violation of the Plaintiff's rights and render him liable in an action at law or other proceeding for redress of the injuries sustained.

**WHEREFORE**, premises considered, the Plaintiff Larry Wayne Barnes, Sr. prays the Court for Judgment against McFadden, and award him compensatory damages in excess of five million dollars ($5,000,000.00), award him punitive damages in excess of five million dollars

($5,000,000.00), prejudgment and post judgment interest, attorneys' fees incurred, and any other relief deemed just and equitable.

### THIRD CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983 (CIVIL RIGHTS)
### PLAINTIFF vs. CITY OF TULSA, PALMER, and JOHN DOES 1-30, 31-40

For his third Cause of Action against the Defendants City of Tulsa, Palmer, and John Does 1-30, 31-40 the Plaintiff adopts and re-alleges all of his allegations above as if fully set forth herein and further alleges and states as follows:

44.     The City of Tulsa, TPD, Palmer, Henderson, and John Does 1-30, 31-40, acting under color of statute, regulation, custom or law of the State of Oklahoma, caused the Plaintiff to be subjected to the deprivation of his rights, privileges, and immunities secured by the Fourteenth Amendment of the Constitution of the United States and its laws in violation of 42 U.S.C. § 1983. The acts of the City of Tulsa, TPD, Palmer, Henderson, McFadden, and John Does 1-30 was reckless, knowing, intentional, malicious and/or wanton violation of the Plaintiff's rights and renders them liable in an action at law or other proceeding for redress of the injuries sustained.

45.      Upon information and belief the City of Tulsa, TPD, Palmer, and John does 31-40 promulgated the policies and procedures pursuant to which Henderson and McFadden conducted their work.

46.     City of Tulsa and Palmer knew of problems Henderson had with following departmental policy, rules, and regulations and willfully and intentionally refused to undertake the necessary remedial efforts to protect the citizens of Tulsa from Henderson. Palmer admitted that

47.     At all times relevant herein, defendant Palmer and John Does 31-40 were supervisors and/or policy makers for the City of Tulsa which employed organized unlawful and illegal customs and practices of TPD officers that fabricated information about persons such as the Plaintiff resulting in: maliciously created unfounded criminal charges against the Plaintiff; falsification of evidence and filing of false police reports and evidence in violation of 21 O.S. §§ 453, 589; committing perjury and encouraging others such as Logsdon in carrying out their mandate in violation of 21 O.S. § 456; conducting departmental-wide retaliatory harassment against the Plaintiffs; improperly training TPD officers as to their conduct in executing misdemeanor traffic arrest warrants regarding Kelie, improperly training TPD officers on firearm discipline during the misdemeanor traffic arrest warrant regarding Kelie, and other particulars that will be revealed upon the completion of discovery. This misconduct was encouraged, tolerated and condoned by Palmer and John Does 31-40.

48.     The City of Tulsa and TPD have a duty and responsibility for training and supervising Henderson and the John Does 1-30 as officers of TPD to protect the constitutional and statutory rights of its citizens such as the Plaintiff and Ms. Barnes.

49.     TPD policy makers such as Palmer, John Does 31-40, as well as its officers such as Henderson, engaged in systemic and wide open perjury, to cover-up constitutional and state law violations committed either themselves or by their fellow officers, supervisors and/or subordinates. Such was done so with the knowledge and condoning of their supervisors such as Palmer and John Does 31-40 who: tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct, and encourage and/or fail to discipline officers who "testilie" and fabricate evidence to initiate and continue the malicious prosecution of the Plaintiff and others.

50.     City of Tulsa TPD, Palmer, and John Does 31-40 knew of the threat of harm and injury Henderson posed to the Plaintiff and the citizens of Tulsa, and acted with deliberate indifference to the Plaintiff's constitutional rights. Indeed, City of Tulsa and TPD's failure to adequately and properly train its officers constitutes deliberate indifference to the rights of persons such as the Plaintiff.

51.     City of Tulsa and TPD, by allowing its officers to violate the due process and equal protection rights of the Plaintiff by conducting unlawful and malicious prosecutions in allowing its employees to conspire to mislead the Court and in committing perjury in furtherance of their desire to maliciously prosecute Plaintiff, to allow conspiracies to arrest has been deliberately indifferent to the unconstitutional actions of its officers, even if its own policies or customs are not unconstitutional.

52.     Alternatively, the City of Tulsa had a policy or custom of failing to properly train and supervise Henderson and the Defendant John Doe officers employed by TPD to protect the constitutional rights of the citizens of Tulsa, Oklahoma. The City of Tulsa and TPD, by failing to perform the foregoing, allowed its officers to violate the due process and equal protection rights of the Plaintiff by conducting an unlawful and malicious prosecutions allowed its employees to conspire to mislead the Court and in committing perjury in furtherance of their desire to maliciously prosecute Plaintiff, allowed conspiracies to arrest has been deliberately indifferent to the unconstitutional actions of its officers.

53.     The actions of the City of Tulsa and TPD violated the Plaintiff's constitutional rights under the Fourteenth Amendment causing him harm and damages. Indeed, the violations of the policies of TPD are so prevalent they amount to a custom or practice that has been ratified by the condoning of the same. By its failure to adopt proper and constitutional policies and

14

customs, TPD created an environment wherein its officers were able to freely and without fear of discipline violate the rights of the citizens such as the Plaintiff.

**WHEREFORE**, premises considered, the Plaintiff Larry Wayne Barnes, Sr. prays the Court for Judgment against the Defendants City of Tulsa, McFadden, and John Does 1-30, and award him compensatory damages in excess of five million dollars ($5,000,000.00), award him punitive damages in excess of five million dollars ($5,000,000.00), prejudgment and post judgment interest, attorneys' fees incurred, and any other relief deemed just and equitable.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**PLAINTIFF vs. CITY OF TULSA, JOHN DOES 1-30, 31-40**

For his Fourth Cause of Action against City of Tulsa, and John Does 1-30, 31-40, the Plaintiff adopts and re-alleges all of his allegations above as if fully set forth herein and further alleges and states as follows:

54.     The Plaintiff exercised his First Amendment rights of free speech which involved a matter of public concern and his right to petition for redress of grievances in filing the instant action, when he filed his original petition in this case and otherwise sought redress for the malicious prosecution by the Defendants.

55.     The Plaintiff's interest in exercising the aforementioned rights was far greater than Tulsa, Henderson, and the Individual Defendants' interests.

56.     The Plaintiff's exercising of his First Amendment rights was both a substantial and motivating factor in the City of Tulsa and John Does 1-30, 31-40 decision to retaliate against the Plaintiff.

57.     The Plaintiff was deprived of his Fourteenth Amendment right to procedural due process, his Fourteenth Amendment substantive due process right to be free from arbitrary or

conscience-shocking police conduct, and his Fourteenth Amendment right to equal protection of the laws.

58.     The actions of the City of Tulsa, TPD, and John Does 1-30, 31-40 violated the Plaintiff's constitutional rights under the Fourteenth Amendment causing him harm and damages. Indeed, the violations of the policies of these defendants are so prevalent they amount to a custom or practice that has been ratified by the condoning of the same. By its failure to adopt proper and constitutional policies and customs, these defendants created an environment wherein its officers were able to freely and without fear of discipline violate the rights of the citizens such as the Plaintiff.

59.     The Plaintiffs suffered grievous emotional trauma and are now in justifiable fear of their lives.

**WHEREFORE**, premises considered, the Plaintiff Larry Wayne Barnes, Sr. prays the Court for Judgment against the Defendants City of Tulsa and John Does 1-30, 31-40, and award him compensatory damages in excess of five million dollars ($5,000,000.00), award him punitive damages in excess of five million dollars ($5,000,000.00), prejudgment and post judgment interest, attorneys' fees incurred, and any other relief deemed just and equitable.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1985 (CONSPIRACY TO VIOLATE CIVIL RIGHTS)**
**PLAINTIFF vs. HENDERSON, McFADDEN, & JOHN DOES 1-30, 31-40**

For his Fifth Cause of Action against Henderson, McFadden and John Does 1-30, 31-40, the Plaintiff adopts and re-alleges all of his allegations above as if fully set forth herein and further alleges and states as follows:

60.     Henderson, McFadden and John Does 1-30, 31-40, conspired with themselves, and with Logsdon, to fabricate a drug transaction in order to deprive the Plaintiff of his due process rights, equal protection or equal privileges.

61.     Henderson, McFadden and John Does 1-30, 31-40 acted in furtherance of the conspiracy in numerous ways, including by allegedly giving illicit drugs to Logsdon in order to fabricate the drug transaction; by coaching Logsdon's trial testimony; and by themselves committing and suborning perjury during the Plaintiff's criminal trial.

62.     Henderson, McFadden and John Does 1-30, 31-40violated Plaintiff's constitutional rights under the Fourteenth Amendment causing him harm and damages. As a result of the unconstitutional and illegal actions Tulsa, Henderson and McFadden, the Plaintiff endured a deprivation of his liberty, pain and suffering, humiliation, embarrassment, emotional distress and loss of society and consortium of his spouse, Ms. Barnes. The Plaintiff is entitled to compensatory damages from these Defendants for these injuries.

**WHEREFORE**, premises considered, the Plaintiff Larry Wayne Barnes, Sr. prays the Court for Judgment against the Defendants Henderson, McFadden and John Does 1-30, 31-40, and award him compensatory damages in excess of five million dollars ($5,000,000.00), award him punitive damages in excess of five million dollars ($5,000,000.00), prejudgment and post judgment interest, attorneys' fees incurred, and any other relief deemed just and equitable.

### SIXTH CAUSE OF ACTION
### NEGLIGENCE AND NEGLIGENCE PER SE
### PLAINTIFF vs. THE DEFENDANTS

For his Sixth Cause of Action against the Defendants, the Plaintiff adopts and re-alleges all of her allegations above as if fully set forth herein and further alleges and states as follows:

63.     The Defendants owed common law and statutory duties to protect persons such as the Plaintiffs from police misconduct, including without limitation the unlawful and unconstitutional investigations by TPD and BATF officers, TPD and BATF officers giving false testimony, and TPD and BATF officers by encouraging others to testify falsely. Such duties include without limitations Tulsa, Palmer and BATF's failure to properly train, monitor, and supervise TPD and BATF officers such as Henderson, McFadden and the John Does 1-30.

64.     The Defendants had a common law and statutory duty to train, supervise, monitor and discipline TPD and BATF officers such as Henderson and McFadden, including termination, once it became known of the obvious signs of misconduct by Henderson and McFadden.

65.     The Defendants breached the aforementioned duties they owed to persons such as the Plaintiffs, and other common law and statutory duties owed to the Plaintiffs that will be revealed during discovery, and as a direct and proximate result of said breaches caused injury to the Plaintiffs.

66.     The Plaintiffs have suffered damages as a result of the duties breached by the Defendants, and other common law and statutory duties owed to the Plaintiffs that will be revealed during discovery. The Defendants are also responsible for the tortious acts of Henderson and McFadden against these Plaintiffs as well as their own tortious acts against these Plaintiffs.  Damages include severe emotional distress, loss of income, pain and suffering, mental pain and suffering, and impairment of earning capacity.

67.     The conduct by BATF, Henderson, McFadden, and John Does 10-30, 31-40 was grossly negligent, reckless, egregious and malicious entitling the Plaintiffs to an award of punitive damages.

**WHEREFORE**, premises considered, the Plaintiff Larry Wayne Barnes, Sr. prays the Court for Judgment against Defendants, and award him compensatory damages in excess of ten thousand dollars ($10,000.00), punitive damages in excess of ten thousand dollars ($10,000.00), prejudgment and post judgment interest, attorney's fees incurred, and any other relief deemed just and equitable.

**SEVEN CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**PLAINTIFF vs. THE UNITED STATES OF AMERICA, PALMER, HENDERSON,**
**McFADDEN, JOHN DOES 1-30, 31-40**

For their Sixth Cause of Action against the United States of America, Palmer, McFadden, and John Does 1-30, 31-40, the Plaintiff adopts and re-alleges all of their allegations above as if fully set forth herein and further alleges and states as follows:

68.     These Defendants' actions were both intentional and reckless. Furthermore, the Defendant's conduct was of an extreme and outrageous nature.

69.     The Plaintiffs suffered and experienced emotional distress because of the Defendant's actions and such distress was severe.

**WHEREFORE**, premises considered, the Plaintiff Larry Wayne Barnes, Sr. prays the Court for Judgment against the Defendants United States of America, Palmer, Henderson, McFadden, and John Does 1-30, 31-40, and award him compensatory damages in excess of five million dollars ($5,000,000.00), award him punitive damages in excess of five million dollars ($5,000,000.00), prejudgment and post judgment interest, attorneys' fees incurred, and any other relief deemed just and equitable.

**EIGHTH CAUSE OF ACTION**
**LOSS OF CONSORTIUM**
**MS. BARNES vs. DEFENDANTS**

For her Eighth Cause of Action against the Defendants, Ms. Barnes adopts and re-alleges all of their allegations above as if fully set forth herein and further alleges and states as follows:

70.     That at the time of this wrongful incarceration, the resulting injuries to Plaintiff, he and Ms. Barnes was lawfully married.  As a result of the injuries to Plaintiff, Ms. Barnes has suffered a loss of services, society, consortium and companionship.

**WHEREFORE**, premises considered, the Plaintiff Linda Sue Barnes. prays the Court for Judgment against the Defendants, and award her compensatory damages in excess of five million dollars ($5,000,000.00), award her punitive damages in excess of five million dollars ($5,000,000.00), prejudgment and post judgment interest, attorneys' fees incurred, and any other relief deemed just and equitable.

Respectfully submitted,

By:   /s/ J. Derek Ingle
J. DEREK INGLE, OBA# 16509
E. TERRILL CORLEY & ASSOCIATES
1809 East 15th Street
Tulsa, OK 74104-4610
(918) 744-6641 - Telephone
(918) 747-4921 - Facsimile

-and-

E. ANTHONY MARESHIE, OBA#18180
E. ANTHONY MARESHIE, P.L.L.C.
6528 D-1 East 101st Street
Box 208
Tulsa, Oklahoma 74133-1202
(918) 519-3771 - Telephone
(918) 970-6927 - Facsimile

-and-

ART FLEAK, OBA#2972
1200 South Cheyenne
Suite 403
Tulsa, Oklahoma 74103

20

(918) 582-9339 - Telephone

*Counsel for Plaintiffs*

## CERTIFICATE OF MAILING

     This is to certify that a true and correct copy of the foregoing was served via ECF electronic transmission and/or U.S. Mail on this 28th day of November, 2011, to the following:

Clark Brewster
Guy A. Fortney
Mark B. Jennings
Brewster & DeAngelis
2617 East 21st Street
Tulsa, Oklahoma 74117-1707
(918) 742-2021
CBrewster@brewsterlaw.com
GFortney@brewsterlaw.com
MJennings@brewsterlaw.com

Gerald Bender, City Attorney
175 E. 2nd Street
Tulsa, Oklahoma  74103
GBender@CityofTulsa.org

Neal B. Kirkpatrick
1861 East 15th Street
Tulsa, Oklahoma 74104
918.747.4600 (Office)
918.855.0769 (Cell)
neal@nkirkpatricklaw.com

Lawrence Eiser, Sr. Trial Counsel
U.S. Department of Justice
Civil Division, Torts Branch
1331 Pennsylvania Ave., NW, Rm. 8076N
Washington, DC 20004
(202) 616-4260  -  telephone
(202) 616-5200  -  facsimile
Larry.Eiser@usdoj.gov

                                       *s/ J. Derek Ingle*_____
                                       J. Derek Inge